# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 29, 2006 Session

## STATE OF TENNESSEE v. FRED JOHNSON

**Direct Appeal from the Criminal Court for Campbell County**
**No. 11443     E. Shayne Sexton, Judge**

---

**No. E2005-00877-CCA-R3-CD   Filed June 30, 2006**

---

The defendant, Fred Johnson, was convicted by a Campbell County jury of five counts of sexual battery, a Class E felony, and five counts of aggravated sexual battery, a Class B felony. He was sentenced to one year for each sexual battery and eight years for each aggravated sexual battery. He received a total effective sentence of twenty-seven years, twenty-four years at 100% as a violent offender for the aggravated sexual battery counts and three years at 30% as a Range I, standard offender for the sexual battery counts. On appeal, he argues: (1) the trial court erred in failing to charge lesser-included offenses; (2) the jury did not understand or follow the charge of the trial court; and (3) the evidence was insufficient to support his convictions for aggravated sexual battery. Following our review, we affirm the judgments of the trial court but remand for entry of corrected judgments to reflect that Counts 3 and 5 are consecutive to Counts 1 and 2.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee, for the appellant, Fred Johnson.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William Paul Phillips, District Attorney General; and Scarlett W. Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On October 16, 2002, the defendant, Fred Johnson, was indicted by the Campbell County Grand Jury for ten counts of rape (Counts 1-10), five counts of incest (Counts 11-15), four counts of rape of a child (Counts 16-19), and one count of aggravated sexual battery (Count 20). The

indictments were the result of the defendant's acts against his granddaughter, M.J.,[1] between 1999 and 2002. At trial, M.J. testified that her grandfather "touched [her] where he wasn't supposed to" during the times that she lived with her family on Axley Road, Brown Fork Road, and Demory Road. M.J. testified that she and her family moved into the Axley Road house in October 2001. M.J. said that, on June 3, 2002, the defendant "licked [her] private part" and "stuck his thing in [her]" while they were in her mother's bedroom. M.J. said the defendant wore "[a] rubber" that he later flushed down the toilet. The defendant told M.J. that "[h]e loved [her] and [she] was a special little girl."

Although she could not recall the exact dates, M.J. described other times the defendant inappropriately touched her at the house on Axley Road. M.J. said the defendant "stuck his finger up in [her] . . . private part . . . [a] couple times in [her] mom's room and once in the basement." Once while she was in the basement watching television, the defendant "started playing with . . . [her] private part . . . [with] [h]is hands and his thing." He also "played with [her] boobs." On another day, the defendant "put his thing in [her], and he put his thing in [her] mouth" while they were in her mother's bedroom. M.J. said this "same thing happened two or three times more" when she lived on Axley Road. M.J. said she never gave her grandfather permission to touch her and that "[she'd] tell him to quit and he wouldn't."

Prior to moving to the Axley Road house, M.J. and her family lived on Brown Fork Road for "[a]bout a year." At this location, the defendant "touched [M.J.] under the clothes . . . in [her] mom's bedroom and the living room." M.J. said she was in the living room watching television when the defendant "felt of" her breasts and "stuck his fingers up in [her] . . . [and] moved them around." She said that while she was in her mother's bedroom, the defendant "stuck his thing in [her]" while wearing "[a] rubber." M.J. said the defendant "stuck his thing in [her]" at this house "two or three times more." In addition, the defendant "stuck his tongue in – on – in [her] and sucked on [her] boobs."

At the Demory Road location, where M.J. lived with her family "[a]bout a year or two" before moving to the house on Brown Fork Road, the defendant "touched [M.J.'s] boobs" while they "were playing hide and go seek." M.J. said the defendant "was playing with [her] boobs" underneath her shirt in her bedroom. When interviewed by the Department of Children's Services, M.J. did not tell the investigator about the incident at the Demory Road residence because she "thought [the defendant] was just playing."

On cross-examination, M.J. acknowledged that she did not "know right off the top of [her] head" how many times the defendant touched her but said it could have been "[n]ine or ten times."

Gail Clift, a sexual assault nurse examiner with Child Help in Knoxville, examined M.J. on June 28, 2002. Clift testified that M.J. had the following injuries:

---

[1]The victim was born on November 21, 1988, and was fourteen years old at the time of trial. It is the policy of this court to refer to juvenile victims of sexual assault by their initials.

> She did have some injuries in her genital area; she had two very specific injuries. She had a small tear in an area that we call the posterior fourchet. She also had a cleft in her hymen at the six o'clock -- five to six o'clock position. She had a notch that was noted in her hymen at the three o'clock and the twelve o'clock position.

Clift explained that "[a] cleft in the hymen is caused by blunt penetrating trauma" and that M.J.'s injuries were consistent with sexual abuse. On cross-examination, Clift acknowledged that M.J.'s injuries could have been caused by a penis, a finger, or a pencil.

The sixty-six-year-old defendant testified that M.J. and her family lived with him at his home on Axley Road. He vehemently denied having any type of sexual contact with M.J.

The jury returned the following verdicts: Counts 1-5, guilty of the lesser-included offense of sexual battery by force or coercion; Counts 6-10, guilty of the lesser-included offense of sexual battery without consent; Counts 11-15, not guilty of incest; Counts 16-19, guilty of the lesser-included offense of aggravated sexual battery; and Count 20, guilty of aggravated sexual battery. The trial court merged Counts 6-10 with Counts 1-5 and sentenced the defendant to one year as a Range I, standard offender for each sexual battery. Counts 1 and 2 were run concurrently with each other but consecutively to Counts 16-20; Counts 3 and 5 were run concurrently with each other but consecutively to Counts 1 and 2; Count 4 was run consecutively to Counts 1, 2, 3, and 5, for a total sentence of three years at 30% for the sexual battery convictions. The trial court sentenced the defendant as a violent offender to eight years for each aggravated sexual battery. Counts 16, 17, and 20 were run consecutively to each other and concurrently with Counts 18 and 19 for a total sentence of twenty-four years at 100% for the aggravated sexual battery convictions. The defendant's total effective sentence was twenty-seven years, with the aggravated sexual battery sentences to be served first.

## ANALYSIS

### I. Lesser-Included Offense Instructions

On appeal, the defendant argues that the trial court "erred in failing to charge the lesser-included offenses of, specifically, child abuse and assault." However, because the defendant failed to request at trial instructions as to any lesser-included offenses, this issue is waived.

Tennessee Code Annotated section 40-18-110 (2003) requires, in pertinent part:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. *Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal*.

Tenn. Code Ann. § 40-18-110(b), (c) (2003) (emphasis added). In the recent case of State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006), our supreme court, reviewing the constitutionality of section 40-18-110, noted that the statute "places a duty on the defendant to request a lesser-included offense in writing at trial to assign as error on appeal the trial court's failure to instruct on such offenses." The court, concluding the statute was constitutional, explained:

[T]he waiver of a lesser-included offense for purposes of plenary appellate review is constitutionally permissible. A trial court's failure to instruct on lesser-included offenses is not a structural error. See State v. Allen, 69 S.W.3d 181, 190-91 (Tenn. 2002) (Holding that failure to instruct on lesser-included offenses is subject to constitutional harmless error analysis). As a non-structural constitutional error, the omission of a lesser-included offense instruction is subject to waiver for purposes of plenary appellate review when the issue is not timely raised and properly preserved. See State v. Terry, 118 S.W.3d 355, 359 (Tenn. 2003) (defendant's failure to request lesser-included offense instruction at trial or in a motion for a new trial waived issue). Similarly, issues involving other non-structural constitutional errors must be preserved to receive plenary appellate review. See State v. Gomez, 163 S.W.3d 632, 645 (Tenn. 2005) (Sixth Amendment right to confront witnesses).

Id. at 230.[2]

In the current case, the trial court, prior to the conclusion of the trial, inquired whether the parties were requesting any lesser-included offense instructions, and defense counsel replied that he was "going to ask the [c]ourt to charge sexual battery as a lesser included" for Counts 1-10. However, after all the evidence was presented, defense counsel did not file a motion asking the court to charge any lesser-included offenses and, in fact, objected to the ones requested by the State:

THE COURT: The Jury is outside the Courtroom. Now that we've closed the evidence, I would ask that you submit your written requests for lesser included offenses so I can be preparing that, if you have it.

. . . .

---

[2]The defendant relies on State v. Robert Page, No. W2003-01342-CCA-R3-CD, 2004 WL 3352994 (Tenn. Crim. App. Aug. 26, 2004), for his contention that the waiver mandated by section 40-18-110 is unconstitutional. However, subsequent to his making this argument, and as discussed in Page, 184 S.W.3d at 223, our supreme court reversed this court's holding and ruled that the statute was constitutional.

[THE STATE]: On the five counts of rape, the State would be asking for a lesser included of sexual battery, which is Counts One through Five. Counts Sixteen, Seventeen, Eighteen and Nineteen, which are rape of a child, the State would request the lesser includeds of aggravated sexual battery.

THE COURT: Do you wish to be heard on that, [defense counsel]?

[DEFENSE COUNSEL]: Yes, your Honor. The defendant objects to the charging of the lesser includeds as requested by the State.

THE COURT: Any particular basis for – I mean, are you saying that – are you saying as a matter of law these are not lesser includeds, or are you saying that the proof does not raise those instructions?

[DEFENSE COUNSEL]: Both.

THE COURT: All right. . . . . [Y]our objection is overruled, and the Court will give the charges as requested.

The trial court then gave the following lesser-included offense instructions: Counts 1-5, lesser-included offense of sexual battery by force or coercion; Counts 6-10, lesser-included offense of sexual battery without the consent of the victim; and Counts 16-19, lesser-included offense of aggravated sexual battery.

In his brief, the defendant maintains that he was "not required to request a charge on the lesser offenses, and the court had an affirmative duty to charge them." While it is true that a trial court should "still give lesser-included offense instructions, even when not requested, when those instructions are necessary for a fair trial," Page, 184 S.W.3d at 229, the "defendant's failure to request a lesser-included offense instruction in writing waives the right to raise such omission as an issue on appeal." Id. Accordingly, this issue is waived. However, we will review the trial court's not charging lesser-included offenses under the doctrine of plain error. Id. at 230. When determining whether such a review is appropriate, the following factors must be established:

(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

State v. Terry, 118 S.W.3d 355, 360 (Tenn. 2003) (citing State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). In addition, "[a]ll five factors must be established by the record before" an appellate court may "recognize the existence of plain error, and complete consideration of all the

factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Id. (citing State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000)).

In this case, the defendant not only failed to request any lesser-included offense instructions, he objected to the State's requested lesser-included instructions. He "has failed to show that he did not waive this issue for tactical reasons. Therefore, the trial court's failure to instruct on [the lesser-included offenses] does not rise to the level of plain error." Page, 184 S.W.3d at 231. This issue is without merit.

## II.  Jury Instructions

The defendant argues that "[i]t is clear . . . that the jury had an unconstitutional understanding of the law in reaching its guilty verdicts in counts 1 through 10 [and] [t]herefore, those verdicts must be set aside." The State responds "the trial court gave a proper unanimity instruction and any error in the jury instructions is harmless because the jury reached a proper verdict and the alternative convictions were properly merged by the trial court." We agree with the State.

Although the defendant was indicted on ten counts of rape, the indictments reflect two different theories of only five separate acts. Counts 1-5 charged the defendant with rape by force or coercion while Counts 6-10 charged him with rape without the consent of the victim. When instructing the jury, the trial court explained:

> You are being asked to consider two separate theories of rape, Counts One through Five, and I'm going to try to make this as clear as I possibly can in giving these instructions. Counts One through Five allege rape by force or coercion. Counts Six through Ten allege rape without the consent of [the] victim, remembering or keeping in mind the State has alleged only five factual possibilities of an offense.
>
> I want to try to keep this -- I don't want to confuse you, but I have dealt with this particular law and in the reading of it, it can be very confusing. And I'm trying to -- and I want the record to know [sic] and I want the parties to know, this is my, you know, last attempt to try to get this to you in a way that you will understand what your job is at this point.
>
> When you consider Count One, for instance, I think the parties will agree that Count One makes certain allegations about a certain event. That same event will apply to Count Six, but there are two possible theories of rape that might be shown. Is that making any sense whatsoever? Is anyone under -- can anyone not grasp that, that the -- that if you return a guilty verdict on Count One, for instance, force or coercion, then you would not go to Count Six, you would not go to without consent because then you would have made your decision on that -- you have picked a theory. Does that make sense? I hope that these instructions make that clear.

Despite the trial court's instructions, the jury returned with guilty verdicts for Counts 1-5, lesser-included offense of sexual battery by force or coercion, and for Counts 6-10, lesser-included offense of sexual battery without consent of the victim. The trial court merged Counts 6-10 with Counts 1-5 and sentenced the defendant only for Counts 1-5.

The defendant insists that the verdicts show that "[t]he jury remained confused as to the charged offenses and the judge's instructions" and that the verdicts are "inconsistent with the law." We disagree. Counts 1-5 and Counts 6-10 represent the same offenses of sexual battery, but completed through different means, Counts 1-5 by force or coercion and Counts 6-10 without the victim's consent. As long as "the means are not mutually exclusive . . . there is no legal bar to verdicts being returned for" each count. State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997). In addition, "[a] trial court should instruct a jury to render a verdict as to each count of a multiple count indictment which requires specific jury findings on different theories . . . and if the jury does return a verdict of guilt on more than one theory . . . the court may merge the offenses and impose a single judgment of conviction." State v. Eddie Medlock, No. W2000-03009-CCA-R3-CD, 2002 WL 1549707, at *4 (Tenn. Crim. App. Jan. 16, 2002), perm. to appeal denied (Tenn. July 1, 2002) (citing Addison, 973 S.W.2d at 267). Here, the jury obviously found the defendant acted with both force and coercion toward the victim, and without her consent. We do not find the means here mutually exclusive. We conclude that the jury verdicts are not inconsistent and that the trial court appropriately merged the offenses and imposed a single judgment of conviction for Counts 1 through 5. This issue is without merit.

### III. Sufficiency of the Evidence

The defendant argues that his "convictions for aggravated sexual battery are not supported by the evidence. This is particularly true of the conviction with regard to count 20." Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Thus, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

To prove aggravated sexual battery, the State was required to show beyond a reasonable doubt that the defendant had "unlawful sexual contact with a victim . . . [who] is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2003). "Sexual contact" is defined as:

[T]he intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Id. § 39-13-501(6). The defendant argues that the conduct in Count 20 occurred during the times that the victim lived on Demory Road. He further argues that the victim's testimony shows that "she thought [the defendant] was playing." The victim's testimony revealed that when she lived on Demory Road, the defendant touched her breasts under her shirt. This evidence was more than sufficient for a rational jury to find the defendant guilty of aggravated sexual battery of the victim beyond a reasonable doubt. As for the other counts of aggravated sexual battery, the victim testified about numerous occasions wherein the defendant sexually touched her. Again, this evidence was more than sufficient to convict the defendant.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court and remand for entry of corrected judgments to reflect that Counts 3 and 5 are consecutive to Counts 1 and 2.

_____
ALAN E. GLENN, JUDGE